IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| HUMAN POWER OF N COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. ____________ |
| v. | § | |
| | § | |
| AMBROSIA BRANDS, LLC, | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |

**COMPLAINT**

Plaintiff Human Power of N Company ("Plaintiff" or "Humann"), appearing through its undersigned counsel, alleges as follows:

**THE PARTIES**

1. Plaintiff Humann is a Texas corporation with a principal place of business at 1250 S. Capital of Texas Hwy., Bldg. 1, Suite 300, Austin, Texas 78746.

2. Defendant Ambrosia Brands, LLC ("Defendant"), is a Wyoming limited liability company with an address of 525 Randall Ave., Ste. 100, Cheyenne, Wyoming 82001.

**NATURE OF ACTION AND JURISDICTION**

3. While Humann welcomes fair and vigorous competition, Defendant is using false and misleading statements about its beet root powder product that will deceive customers into expecting unsubstantiated and unproven health and wellness benefits from use of Humann's products, which similarly include beet ingredients, but are carefully formulated to provide therapeutic doses of nitrate, dietary nitrite

and other ingredients in order to offer clinical benefits to consumers. Humann therefore brings this action for false advertising and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act") and for unfair competition under Texas common law.

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

5. This Court has personal jurisdiction over Defendant because it engaged in wrongful action in Texas, including acts within this District. Defendant has offered for sale and made sales into this District, targeting consumers within this District with Defendant's false and misleading statements about its products.

6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Humann's claims occurred here.

## FACTS

### HUMANN AND ITS PRODUCTS

7. For over fifteen years, Humann has been an industry leader in functional food and nutritional supplements for human health. Founded from scientific research at the University of Texas and a research program created by Nobel laureate Dr. Ferid Murad, the science behind Humann's products have been validated and vetted by a premier team of doctors and nutritionists.

8. Among Humann's first and most popular products are its SUPERBEETS heart chews and dietary supplements. Humann's SUPERBEETS products harness the real and measurable benefits of nitrates, found naturally in beets, to support the body's generation of nitric oxide. In order to provide sufficient nitrate and other elements in the products, however, Humann includes additional ingredients in its products, such as fermented beet root powder or grape seed extract, to provide sufficient amounts of nitrate, dietary nitrite, or the other ingredients necessary to deliver the scientifically established clinical benefits.

9. Humann offers its SUPERBEETS products in various forms, including chews, powders, gummies, and capsules. Common to all SUPERBEETS products is the inclusion of non-GMO beetroot powder sustainably sourced from renowned growing regions. The SUPERBEETS products are formulated with additional ingredients such as fermented beet root powder or grape seed extract in quantities and concentrations necessary to achieve clinically supported health benefits.

10. The health benefits of Humann's SUPERBEETS products are backed by a robust body of research.

11. For example, researchers at the University of Iowa published a 2017 study that compared the use of Humann's SUPERBEETS product with a placebo over four weeks. The results of the study showed that individuals using Humann's SUPERBEETS product experienced a beneficial effect on their blood pressure levels when compared to the placebo group. An accurate copy of the study is attached hereto as **Exhibit A.**

12. In a 2018 study published in the American Journal of Physiology, University of Iowa researchers observed that nitrate supplementation through Humann's beet root powder reduced systolic and mean arterial blood pressure without affecting spontaneous cardiovagal baroreflex sensitivity, which suggests that inorganic nitrate may attenuate sympathetically oriented pathologies associated with aging. An accurate copy of the study is attached hereto as **Exhibit B.**

13. In a 2021 study published in the medical journal Current Research in Physiology, researchers from Northern Illinois University, the University of Wisconsin, the University of Texas at Austin, and Westfield State University observed Humann's beet root supplement delayed fatigue and improved total work output in cyclists riding at higher cadence rates. An accurate copy of the study is attached hereto as **Exhibit C.**

14. Humann's careful use of clinical studies allow it to substantiate and promote the health benefits of its SUPERBEETS products. The body of research shows that Humann's SUPERBEETS products promote healthy blood pressure, circulation, and daily energy.

15. The quality and measurable benefits associated with Humann's products have resulted in numerous awards and recognition from medical associations. As of 2025, Humann is the #1 cardiologist-recommended beet brand for cardiovascular health support and the #1 pharmacist recommended beet brand for heart health support based upon market survey date. In addition, Humann was the recipient of the 2017 Nutrition Science Award by Nutrition Business Journal.

16. Humann's advertising for its SUPERBEETS products is extensive. Humann advertises its products through its website, www.humann.com, through substantial television advertising, digital advertising, public venue signage and sponsorships, and through Humann's network of brand ambassadors and influencers. In addition to Humann's online and offline advertising channels, Humann also boasts over 28,000 followers on Facebook, 40,000 followers on Instagram, and 4,700 followers on TikTok.

17. Beyond Humann's success at retail, Humann products are utilized by over 200 college and professional athletics teams to supplement team nutrition. In 2025, Humann became the official cardiovascular supplement sponsor of the University of Texas Athletics.

## DEFENDANT AND ITS UNLAWFUL ACTIVITIES

### *Defendant's False Advertising Campaign*

18. Defendant Ambrosia Brands operates a competing business under the brand name "Rosabella" selling similar nutritional supplements based on beetroot and beetroot byproducts.

19. Defendant solicits its products to a similar category of customers by offering a competing beetroot supplement. Defendant sells its beetroot powder product online, on Defendant's website www.tryrosabella.com. A screenshot of Defendant's point of sale is attached hereto as **Exhibit D**.

20. Defendant's products are similar to Humann's products in that Defendant includes beetroot powder in its products.

21. Defendant lists its products at the same price as Humann's competitive but superior products. Defendant sells a one-month supply of its beetroot capsules for $39.95, or $35.96 with automatic refills. Humann sells a one-month supply of its SUPERBEETS beetroot powder at $39.95 per container, or $35.96 with a recurring monthly subscription—the same price as Defendant's one-month supply. However, Defendant's products are frequently available at significant discounts, sometimes as low as $10 per container for a one-month supply. These discounts are often available on the TikTok Shop, the same platform where Defendant sponsors its influencers. True and accurate screenshots of the points-of-sale showing the price of the parties' respective products are attached as **Exhibit E.**

22. Beginning at least as early as July 2025, Defendant began to make unfounded, unsubstantiated claims about the efficacy and health benefits of its competing beetroot product. None of these claims are supported by scientific, peer-reviewed studies or tests. Defendant's products do not contain any of the additional ingredients, such as fermented beetroot powder or grape seed extract, that would deliver nitrate, nitrite, or other ingredients in dosages necessary to deliver clinical benefits.

23. For example, Humann's testing of a sample of Defendants product indicates that a serving of two capsules of Defendants beetroot powder contains 11.2 mg of nitrate. Any clinical benefit from nitrate alone would require approximately 400mg of nitrate. As such, a consumer would need to take approximately thirty-five

doses of Defendant's product at one time in order to receive a clinically relevant amount of nitrate.

24. These misrepresentations (the "False Claims") contains numerous literally false statements about the health benefits and quality of Defendant's products.

25. The False Claims also amount to misleading statements that are certain to mislead a substantial portion of Humann's target customers. Specifically, consumers relying on Defendant's false and unsubstantiated claims about its products to their detriment will be deceived as to the efficacy of similar products like Humann's products, which are rigorously tested, carefully formulated, and backed by bona fide scientific research, unlike Defendant's products. Consumers will come to expect unrealistic health benefits from products that also contain beetroot ingredients.

26. For example, Defendant claims its beetroot capsules "aid[] healthy circulation." There is no study or test that substantiates Defendant's claim that its beetroot powder alone aids healthy circulation.

27. For example, Defendant claims its beetroot capsules "assist[] athletic performance." There is no study or test that substantiates this claim for beetroot powder alone.

28. For example, Defendant claims its beetroot capsules "offer[] superior potency . . . compared to leading beetroot powder organic brands." There is no study

or test that substantiates this claim, particularly any study that directly compares Defendant's products with other "leading" beetroot powder brands.

29. Defendant also claims its beetroot capsule product is "made with natural ingredients," is "100% vegan," and "each serving . . . contains 1300mg of "Pure Organic Beetroot Powder." A representative image of Defendant's marketing representations about its ingredients is copied below.




30. This statement was literally false, as Defendant's products also contain magnesium stearate and microcrystalline cellulose. Both of these ingredients are processed and are not "natural." A true and accurate image of Defendant's product label is depicted below, showing the magnesium stearate and microcrystalline cellulose ingredients.




***Defendant's Beetroot Capsule Label***

31. Defendant also makes false claims about the studies and testing related to its products. For example, as recently as July 10, 2025, Defendant claimed that its products "are expertly crafted by top cardiovascular health specialist and backed by cutting-edge science." A screenshot displaying this claim is pictured below.




32. This statement is literally false, as Defendant, on information and belief, does not work with or have any business relationship with "top cardiovascular health specialists" or any medical professional. Defendant removed this claim only after Humann objected to this misrepresentation in July 2025.

33. Defendant also falsely claims that its beetroot capsule product is CGMP certified.

34. The initialism "CGMP" refers to the "Current Good Manufacturing Practice" regulations set forth by the Food and Drug Administration (FDA). According to the FDA, CGMP adherence "assures the identity, strength, quality, and purity of drug products by requiring that manufacturers of medication adequately control manufacturing operations." Attached as **Exhibit F** is a publication by the FDA describing the requirements associated with CGMP regulations and certification.

35. To obtain CGMP certification, the FDA must inspect a company's manufacturing facilities and test its products. *See* Exhibit F.

36. On information and belief, Defendant has not obtained CGMP certification from the FDA, nor has the FDA inspected or tested Defendant's products for certification.

37. Defendant also falsely claims its beetroot capsules are "Made in USA." A screenshot showing Defendant's "Made in USA" claim is attached hereto as **Exhibit G** and shown below.




38. On information and belief, the beetroot contained in Defendant's capsules are not grown in the US. Defendant concedes as much with the qualifying language "with global ingredients." A screenshot showing Defendant's qualifying language is shown below.




39. Under the Federal Trade Commission's definition of "Made in the United States," all significant processing that goes into a product *and* "all or virtually all ingredients or components" of the product must be made and sourced in the United States to accurately state that a product is "Made in the USA." 16 C.F.R. § 323.2.

40. To offer Defendant's product at the discounted price point of around $10 per bottle, Defendant could not sustainably source its beetroot powder from the United States.

41. On information and belief, Defendant is not using beetroot grown in the United States in its beetroot capsules, which makes Defendant's claims about "Made in the USA" false.

42. On information and belief, Defendant targets Humann's customers with these false claims and misrepresentations. Defendant imitates Humann's truthful advertising to appeal to the same category of customer.

43. For example, Defendant often uses wording and claims that are identical to Humann's advertising materials, especially for Defendant's health claims presented via its direct-to-consumer website and on Amazon. A representative comparison of Defendant's advertising with Humann's advertising is pictured below.

<table>
<tr>
<td>
</td>
<td>
</td>
</tr>
<tr>
<td>Defendant's Health Claims</td>
<td>Humann's Health Claims</td>
</tr>
</table>

44. As the above comparison shows, Defendant makes health claims identical Humann to promote its competing but inferior product with identical statements such as "healthy blood pressure support," "promotes heart healthy energy," supports circulation & blood flow," and "helps increase nitric oxide production."

45. However, unlike Humann, Defendant cannot substantiate these claims. Humann has long worked with the scientific community to test and study the benefits of its products and its formulations. Defendant's products contain dosages of nitrate that are insufficient to provide any clinical benefit, yet it uses the same health claims to promote its inferior product.

### *Defendant's "Viral" Misinformation Campaign on TikTok*

46. In addition to the False Claims directly attributable to Defendant, Defendant is also orchestrating a misinformation campaign on TikTok through its network of influencers (the "TikTok Posts").

47. The influencers and personas featured across the TikTok Posts make various misrepresentations about the health and wellness benefits of Defendant's beetroot products, which are entirely unfounded.

48. For example, in a November 25, 2025 post, influencer "badobadi86" claims that as a result of consuming Defendant's beetroot product, the influencer's "performance in the gym and the bedroom has increased by far." Representative screenshots of this influencer's posts are attached hereto as **Exhibit H**.

49. In a January 2, 2026 post, the same influencer claimed that Defendant's beetroot product "increased blood flow especially to the lower area," referencing sexual performance. Representative screenshots are attached as **Exhibit I**.

50. As another example, in an October 29, 2025 post, influencer "wellness.tips07" purports to show an AI-generated speaker that claims that aches, stiffness, pains, and inflammation is not "weight, your age, and definitely not arthritis," but instead a blood circulation issue that Defendant's products can alleviate. The post features the hashtags #womenhealth and #health, as well as the label indicating that the post is created with AI. Representative screenshots of this influencer's posts are attached hereto as **Exhibit J**.

51. Influencers like “badobadi86” and “wellness.tips07” flood the internet with such videos. Since July 10, 2025 alone, influencer badobadi86 has created promotional videos daily for Defendant. All to nearly all of this influencer’s videos represent that Defendant’s products increase sexual performance.

52. There is no evidence, scientific or otherwise, which substantiate the claim that beetroot, alone, at the dosages provided by Defendant’s products, increases athletic or sexual performance. Neither Defendant nor its influencers cite or otherwise rely on any studies, clinical trials, or even concrete evidence that Defendant’s products cause the benefits they claim.

53. Other TikTok Posts are more nefarious. In several TikTok Posts, the post purports to show a doctor, medical professional, or other medical authority espousing the health benefits of Defendant’s products. All or nearly all of the “doctors” featured in the TikTok Posts are AI-generated and fictitious.

54. For example, in a June 14, 2025 TikTok post, influencer “poormaninla” purports to depict a doctor in a whitecoat that promotes the alleged health benefits of Defendant’s products. Before the “doctor” begins speaking, a separate speaker is imposed on the screen in a surgeon’s or nurse’s scrubs. Representative screenshots of this post are attached as **Exhibit K.**

55. For example, in a June 23, 2025 post, influencer “holistic.love” purports to show a “surgeon,” who is AI-generated, promoting the health benefits of Defendant’s products and their ability to achieve a “SLIM stomach secret.” This post,

and many other posts from Defendant's influencers, are tagged with a "paid partnership" label on TikTok. Representative screenshots are attached as **Exhibit L**.

56. For example, in a December 5, 2025 TikTok post, influencer "thehealerdirect" purports to show a couple that lost a significant amount of weight in just ninety days because of Defendant's products. The couple then claims they relied on an individual with "21 years in holistic healing," who promotes Defendant's products, but claims users don't need to skip meals or exercise. Neither the couple nor the representative with "21 years in holistic healing" are real, however, and the post is tagged with "Creator labeled as AI-generated." Representative screenshots of this post are attached as **Exhibit M.**

57. In other posts, the AI-generated speaker provides controversial medical advice. For example, in a December 3, 2025 post, creator "healthyteach888" tells viewers they do not need to "eat clean" or "any medication that some doctor may try to push on you" in order to lose weight. Instead, according to the speaker, the viewer just needs Defendant's beetroot products. Representative screenshots of this post are attached as **Exhibit N**.

58. In several other posts, the account owner purports to depict a representative of a specific ethnicity stating why Defendant's products benefit that ethnicity. Many of these posts contains sweeping generalizations and even downright racist statements.

59. For example, in the June 14 TikTok post referenced above, the nurse or doctor speaking at the beginning of the video says "Just because he's black, doesn't mean he's joking." Representative screenshots of this post are attached as Exhibit K.

60. Defendants influencers flood TikTok with similar racially charged posts. For example, in a July 28, 2025 post, creator "trinibof8dl" depicts a white woman stating "Black doctors don't know what they're doing is a big lie." The video then shows a speaker in front of a backdrop which reads "Black Health Society," who promotes Defendant's beetroot product. Representative screenshots of this post are attached as **Exhibit O**.

61. For example, creator "stella.ryan2" has created numerous TikTok posts promoting Defendant's products with captioned titles like "He found the Asian SECRET to HIDE BELLY." In a November 26, 2025 post, the depicted speaker is dressed in a Buddhist monk's garb and states "I'm thirty years older than the average man who dies in America, but nobody believes me when I tell them this." Representative screenshots of such posts are attached hereto as **Exhibit P**.

62. In a similar December 12, 2025 post, creator "sydneyswellness" uses the caption "Ancient Asian secret for Women over 45." The speaker references his "teacher," a "Dr. Lee Jong Shin," who "long ago" encouraged the speaker to use Defendant's beetroot product. Representative screenshots of this post are attached as **Exhibit Q**.

63. Not only is Defendant and its promoters misrepresenting the nature and quality of Defendant's products, but numerous TikTok Posts are entirely created by generative artificial intelligence.

64. This creates a separate layer of deception, as consumers may not know that the endorsing speaker featured in the posts are fictitious.

65. On information and belief, Defendant profits from the TikTok Posts through commission and consumer redirect links, which are used to compensate the creators of the TikTok Posts as well as drive consumer traffic to Defendant's points-of-sale.

66. On information and belief, Defendant is compensating influencers like "poormaninla," "trinibof8dl," and "badobadi86" for these claims. For example, on the same November 25 post and numerous others, the influencer indicates that his promotion of Defendant's products are part of a paid partnership. Representative screenshots of these influencers' paid partnership disclosure are shown below.






67. Defendant relishes in its fabricated popularity online. For example, Defendant states on its point of sale for its beetroot capsules that the capsules are "Viral on TikTok." A representative screenshot of this claim is shown below.




68. The fact that Defendant relies on artificially generated content and paid endorsements also makes the "viral on TikTok" claim false.

### EFFECTS OF DEFENDANT'S UNLAWFUL ACTIVITIES

69. Defendant's false and misleading representations undermine public confidence in other beet products, like Humann's SUPERBEETS products. Consumers expecting the results and benefits promised by Defendant will be disappointed to find out that beetroot alone cannot provide them and may be generally discouraged from purchasing any other beet related supplement.

70. Defendant's products are often sold at much lower prices compared to Humann's SUPERBEETS products, causing consumers to purchase a cheaper, inferior product that falsely claims to provide similar, or even enhanced, benefits.

71. Defendant has not substantiated any of the health or ingredient claims made in its advertising.

72. Defendant's actions are intended to deceive consumers into falsely believing that Defendant's products are a cheaper substitute to Humann's SUPERBEETS products.

73. Defendant's unabated actions over Humann's objections establish that Defendant's actions were willful and undertaken in bad faith, and this is an exceptional case under 15 U.S.C. § 1117.

74. Consumers who rely on Defendant's misstatements and falsehoods have been and will be deceived into purchasing Defendant's products believing that they are cheaper substitutes. Consumers will also incorrectly assume that beet-based products can provide health benefits that they cannot.

75. Additionally, Defendant's false statements regarding its beetroot capsules are material to consumers' decisions to purchase Defendant's products.

76. Unless these acts of Defendant are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Humann, to the public, and to Humann's consumers for which there is no adequate remedy at law.

## COUNT I: FEDERAL FALSE ADVERTISING
## (15 U.S.C. § 1125(a))

77. Humann incorporates and repeats the allegations above as if fully set forth herein.

78. The acts of Defendant complained of herein constitute false or misleading descriptions or representations of fact about Defendant's products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79. Such false or misleading representations about Defendant's products are material to consumers' decisions to purchase Defendant's products or Humann's products.

80. Defendant's statements have a tendency to deceive—and are believed to have deceived—a substantial segment of its audience.

81. Defendant caused its false statements to enter interstate commerce by making them on Defendant's website, Defendant's and its agents' social media channels, and Defendant's other points of sale targeting Humann's customers.

82. Defendant's false representations about its products misrepresent the nature, characteristics or qualities of Defendant's goods.

83. By reason of Defendant's acts as alleged herein, Humann has suffered and will continue to suffer damage and injury to its business and reputation, along with losses of revenue and profits associated with its goods.

84. Humann has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law. Humann has no adequate remedy at law.

## COUNT II: CONTRIBUTORY FALSE ADVERTISING

85. Humann incorporates and repeats the allegations above as if fully set forth herein.

86. Defendant's orchestration of a "viral" TikTok marketing scheme constitutes contributory false advertising under 15 U.S.C. § 1125(a).

87. Defendant's influencers have made a series of false, unsubstantiated claims about the efficacy of Defendant's products that injures Humann.

88. Defendant materially contributed to such conduct by knowingly inducing and causing the influencers to make such false statements. Defendant pays its influencers to make such false statements, evidenced by the "paid partnership" disclaimers featured in Defendant's influencers' posts.

89. Humann raised its objections with Defendant's and Defendant's influencers conduct as early as July 2025. Despite Humann's objections, Defendant's paid influencers continue to make false representations about Defendant's products. Accordingly, Defendant is liable for the false advertising of its influencers.

90. Humann has suffered, and will continue to suffer, irreparable harm from Defendant's and its influencers' acts and conduct, unless restrained by law.

**COUNT III: FEDERAL UNFAIR COMPETITION**
**(15 U.S.C. § 1125(a))**

91. Humann incorporates and repeats the allegations above as if fully set forth herein.

92. Defendant's false and misleading statements constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

93. Humann has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

**COUNT IV: TEXAS COMMON LAW UNFAIR COMPETITION**

94. Humann incorporates and repeats the allegations above as if fully set forth herein.

95. Under Texas law, the elements necessary to prove unfair competition through false advertising parallel those elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce.

96. The acts of Defendant complained of herein constitute false or misleading descriptions or representations of fact about Defendant's products.

97. Such false or misleading representations about Defendant's products are material to consumers' decisions to purchase Defendant's products or Humann's products.

98. Defendant's statements have a tendency to deceive—and are believed to have deceived—a substantial segment of its audience.

99. Defendant's false representations misrepresent the nature, characteristics or qualities of Defendant's products, constituting false advertising.

100. Therefore, the acts of Defendant complained of herein and stated above constitute common law unfair competition in violation of the common law of the State of Texas.

101. By reason of Defendant's acts as alleged herein, Humann has suffered and will continue to suffer damage and injury to its business and reputation, along with losses of revenue and profits associated with its products.

102. Indeed, Humann has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law. Humann has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that:

(a) Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined from making false or misleading representations or statements in the marketing of its goods regarding the nature, characteristics or qualities of Defendant's goods;

(b) Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all labels and advertisements, online or offline, and any other materials bearing false or misleading representations or statements about Defendant's goods;

(c) Defendant be ordered to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

(d) Plaintiff recover all damages it has sustained as a result of Defendant's false advertising and unfair competition, and that said damages be trebled;

(e) An accounting be directed to determine Defendant's profits resulting from Defendant's activities, and that such profits be disgorged from Defendant and paid over to Plaintiff;

(f) Plaintiff recover all other equitable relief, including injunctive relief and corrective advertising, to which Plaintiff shows itself entitled;

(g) Plaintiff recover its reasonable attorneys' fees;

(h) Plaintiff recover its costs of this action and prejudgment and post-judgment interest; and

(i) Plaintiff recover such other relief as the Court may find appropriate.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues triable by jury under Federal Rule of Civil Procedure 38.

Dated: February 17, 2026

Respectfully submitted,

*__/s/ Stephen P. Meleen__*

Stephen P. Meleen
Texas Bar No. 00795776
Daniel S. Martens
Texas Bar No. 24116722
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
Telephone: (512) 322-5200
smeleen@pirkeybarber.com
dmartens@pirkeybarber.com

*Attorneys for Plaintiff Human Power of N Company*