**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| HUMAN POWER OF N COMPANY, | ) | |
| | ) | Cause No. 1:26-cv-00374-ADA-ML |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMBROSIA BRANDS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED**
**COMPLAINT OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT**

Defendant Ambrosia Brands, LLC, ("Defendant" or "Ambrosia") respectfully submits this

Motion to Dismiss Plaintiff Human Power of N Company's ("Plaintiff" or "Humann") First

Amended Complaint ("FAC"), ECF No. 14, pursuant to Federal Rule of Civil Procedure 12(b)(6).

In the alternative, Ambrosia moves for a more definite statement pursuant to Fed. R. Civ. P. 12(e).

**INTRODUCTION**

Humann's FAC does not cure the deficiencies identified by Ambrosia that were present in

the original complaint. As before, Humann attempts to assert four claims against Ambrosia: (I)

federal false advertising, (II) contributory false advertising, (III) federal unfair competition, and

(IV) Texas common law unfair competition. But Humann's pleadings do not identify which of

Ambrosia's acts or omissions are unlawful in relation to each claim. As one example, in Paragraph

22 of the Complaint, Humann makes the conclusory statement that Ambrosia makes "unfounded,

unsubstantiated claims" and then in Paragraph 25 defines "these misrepresentations" as

constituting the "False Claims." Humann then goes on to provide a lengthy recitation of

Ambrosia's alleged marketing without tying the allegations to any particular cause. Each of

Humann's causes of action generally refer back to the entirety of the factual allegations in the

Complaint. *See, e.g.,* Count I, FAC ¶ 85 ("[t]he acts of Defendant complained of herein constitute false or misleading descriptions or representations of fact about Defendant's products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)"); Count III, FAC ¶ 99 ("Defendant's false and misleading statements constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)"). Humann does not explain which claims it believes are unsubstantiated, literally false, or misleading or which legal standards apply to which claims— instead, it takes a "throw it on the wall and see what sticks" approach to pleading. This tack does not provide Ambrosia with adequate notice of what conduct is alleged to violate what standard.

What *is* clear is that much, if not all, of Humann's FAC fails to state a claim for which relief can be granted. As introduced in Paragraph 22 of the FAC, Humann believes Ambrosia's claims are "unsubstantiated." However, any claim (and a Complaint) premised on a "lack of substantiation" theory must fail, as this theory of liability is not available to a private plaintiff. Humann's FAC attempts to bolster its substantiation claims by adding the conclusory allegation that Ambrosia's claims are "literally false" because "the ingredients and quality of Defendant's product cannot provide health benefits that Defendant represents." *See, e.g.*, FAC ¶ 28. But, Humann introduces *no facts* whatsoever that Ambrosia's claims are false. Instead, it continues to insist that Ambrosia's claims are not supported by studies or tests—*i.e.,* that they lack substantiation. *See, e.g., id.* ¶ 29 ("There is no study or test that substantiates this claim"). The law is clear that any claims based on lack of substantiation are barred. Accordingly, there is no set of facts that Humann can allege that would entitle it to relief based on allegedly "unsubstantiated" claims.

Humann further attempts to add facts in the FAC to remedy its deficient allegations that Ambrosia is liable for third-party conduct and content creation. Yet, again, Humann alleges no

2

facts that Ambrosia did anything to induce or materially contribute to the alleged unlawful third-party conduct. At most, Humann alleges a normal business relationship between Ambrosia and third parties. *Id.* ¶ 66. While Humann now pleads the existence of a Discord channel and alleged messaging guides, Humann does not assert any fact that the Discord channel or guides contain information inducing or promoting the claims Humann has highlighted in its FAC—or even that the handful a creators highlighted by Humann in its FAC received any guidance from Ambrosia. Humann merely alleges that these resources exist, not that they encourage unlawful activity. *See id.* ¶ 68. This is inadequate to plausibly plead contributory false advertising.

Accordingly, Ambrosia respectfully requests that the Court dismiss Humann's claims in the FAC premised on lack of substantiation and contributory false advertising or, in the alternative, order Humann to provide a more definite statement.

**STATEMENT OF RELEVANT ASSERTED FACTS**

Ambrosia offers for sale a beetroot powder supplement in capsule form under the brand name Rosabella. FAC ¶ 18. Humann asserts that "[b]eginning at least as early as July 2025, Defendant began to make unfounded, unsubstantiated claims about the efficacy and health benefits of its competing beetroot product." *Id.* ¶ 22. Humann continues, "[n]one of these claims are supported by scientific, peer-reviewed studies or tests." *Id.* In its FAC, Humann adds the conclusory allegation that "beyond lacking scientific or academic substantiation, Defendant's claims about the efficacy and health benefits of its products are false and misleading." *Id.* ¶ 23. Humann, however, does not allege any facts in this regard—it merely repeats the conclusory claim that "the ingredients and quality of Defendant's product cannot provide the health benefits that Defendant represents." *See, e.g., id.* ¶¶ 27-29, 53, 76, 78.

Examples of allegedly unsubstantiated claims are scattered throughout Humann's Complaint:

> For example, Defendant claims its beetroot capsules "aid[] healthy circulation." There is no study or test that substantiates Defendant's claim that its beetroot powder alone aids healthy circulation. FAC ¶ 27.

> For example, Defendant claims its beetroot capsules "assist[] athletic performance." There is no study or test that substantiates this claim for beetroot powder alone. FAC ¶ 28.

> Defendant makes health claims . . . such as "healthy blood pressure support," "promotes heart healthy energy," ["]supports circulation & blood flow," and "helps increase nitric oxide production." . . . Defendant cannot substantiate these claims. FAC ¶¶ 44-45.

> There is no evidence, scientific or otherwise, which substantiate the claim that beetroot, alone, at the dosages provided by Defendant's products, increases athletic or sexual performance. FAC ¶ 53.

Humann makes a number of additional allegations against Ambrosia, but it is unclear whether these allegations form the foundation of any of its four putative causes of action. For example, Humann alleges that Ambrosia "lists its products at the same price as Humann's competitive but superior products" and frequently offers its products "at significant discounts." *Id.* ¶ 21; *see also id.* ¶ 77. Similarly, Humann provides sensationalist allegations that it does not tie to any of its claims. For example, Humann claims that third-party TikTok posts "contain sweeping generalizations and even downright racist statements." *Id.* ¶ 59. Humann does not indicate whether Ambrosia's pricing or alleged racist statements by a third-party are a factual predicate to any of its claims. In addition, Humann alleges that Ambrosia "promotes the substantial amount of money that Defendant's influencers can make from promoting Defendant's products," including a screenshot indicating that a creator made a significant amount of money from commissions. *Id.* ¶ 72. Again, it is not clear to which of Humann's claims this is directed, if any.

Humann highlights what it alleges to be noncompliant and unsubstantiated TikTok posts, published by a handful of third-party TikTok creators. *Id.* ¶¶ 47-75. As for Ambrosia, Humann makes two general assertions. First, Humann alleges that some of the posts include a "paid partnership" tag and receive commissions for directing sales to Ambrosia's product. *Id.* ¶¶ 56, 66, 95. Second, Humann asserts:

> Defendant operates, controls, and solicits participation in a private Discord channel for its creators and influencers. On information and belief, among the services offered on the private channel, Defendant provides a 10-hour course to its creators on advertising Defendant's products, Defendant coaches and provides advertising scripts and messaging guides for advertising Defendant's products, and Defendant operates a network for Defendant's influencers to learn from each other and Defendant.

*Id.* ¶ 68. However, Humann makes no allegation that Ambrosia uses the Discord channel or any alleged messaging guides to promote or encourage the allegedly unsubstantiated and improper claims made by the creators highlighted in the Complaint. Humann merely alleges that support channels exist, not that Ambrosia is inducing unlawful activity through them.

## LEGAL STANDARD

### I.     <u>Motion to Dismiss</u>.

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550

U.S. at 556). In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept factual assumptions or legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79.

## II.      Legal Standards for Plaintiff's Claims.

### A.  False Advertising and Unfair Competition

To prove a claim of false advertising under the Lanham Act, a plaintiff must establish the following elements: (1) a false or misleading statement of fact about a product; (2) a statement which actually deceived or had the capacity to deceive a substantial segment of potential consumers; (3) a material deception in that it was likely to influence a consumer's purchasing decision; (4) the product was in interstate commerce; and (5) plaintiff had been or was likely to have been injured as a result of the statement in issue. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F. 3d 489, 495 (5th Cir. 2000). Failure to prove "any element of the prima facie case is fatal to the plaintiff's claim." *Id.* at 495. Federal and common law unfair competition claims are analyzed in the same manner as a false advertising claim when premised on the same conduct. *See Boltex Mfg. Co., L.P. v. Galperti, Inc.,* 827 F. App'x 401, 409 (5th Cir. 2020); *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *3 (W.D. Tex. Mar. 18, 2008) ("[B]ecause Plaintiffs' allegations in support of their unfair competition claim are essentially the same as those in support of their false advertising claim, the Court construes the Complaint as alleging a primary tort of false advertising with a dependent or supplemental claim for unfair competition, and thus the unfair competition claim is dependent upon the false advertising claim").

B. Contributory False Advertising

To plead contributory false advertising, a plaintiff must first show direct infringement by a third party and contribution by the defendant. *See, e.g.*, *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1277 (11th Cir. 2015) ("[o]nce the plaintiff establishes the elements of a direct false advertising claim against a third party, it must allege that the defendant contributed to that conduct. This means that the plaintiff must allege that the defendant had the necessary state of mind—in other words that it 'intended to participate in' or 'actually knew about' the false advertising") (citation omitted); *see also Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-1400, 2019 WL 2723253, at *5 (S.D. Tex. June 28, 2019), *clarified on denial of reconsideration*, No. 4:17-CV-1400, 2019 WL 9143478 (S.D. Tex. Aug. 23, 2019) (affirmatively citing *Duty Free Ams.*, 797 F.3d at 1277). "The plaintiff must also allege that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *Duty Free Ams.*, 797 F.3d at 1277 (*citing 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013)).

III.   **Motion for a More Definite Statement.**

A more definite statement of a pleading is required when the pleading "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). "Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court." *Di Piazza v. Weather Grp. Television, LLC*, No. 5:19-CV-060-C, 2019 WL 8107920, at *2 (N.D. Tex. June 3, 2019) ((*quoting Russell v. Grace Presbyterian Village,* 2005 WL 1489579, at *3) (*citing Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d 126, 130 (5th Cir. 1959)).

7

**ARGUMENT**

**I.      Plaintiff's Claims Based on "Lack of Substantiation" Should Be Dismissed.**

Humann's First Amended Complaint is predicated on an alleged lack of substantiation for the marketing claims identified in the FAC. *See* FAC ¶ 22. The law, however, is clear that any claims based on a lack of substantiation are barred.

A lack of substantiation theory of liability is not available to a private plaintiff under the Lanham Act. Federal courts that have addressed "lack of substantiation" theories of liability have held that a plaintiff cannot bring a false advertising claim against a defendant by merely alleging that the defendant cannot prove its claim. *See, e.g.*, *Procter & Gamble Co. v. Chesebrough-Pond's Inc.*, 747 F.2d 114, 119 (2d Cir. 1984) ("plaintiff bears the burden of showing that the challenged advertisement is false and misleading, … not merely that it is unsubstantiated by acceptable tests or other proof"); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227–29 (3d Cir. 1990) (plaintiff may not prevail in a Lanham Act case merely by showing inadequacy of substantiation—refusing to "blur" differences between FTC and Lanham Act claims);[1] *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1138 (4th Cir. 1993) ("to succeed on its Lanham Act count, Mylan will have to show more evidence than mere proof that the defendants' claims were supported by unpersuasive test results"); *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1091 (7th Cir. 1994) ("a Lanham Act plaintiff bears the burden of proving literal falsity . . . the plaintiff must offer affirmative proof that the advertisement is false"); *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 122 (D. Mass. 1996) ("[i]n a non-establishment claim, the plaintiff's burden is greater: the plaintiff must prove actual falsity of the challenged claim, 'not

---

[1] Section 5 of the FTC Act allows the FTC to bring a claim alleging a lack of substantiation. *See FTC v. Zaappaaz, LLC*, No. 4:20-cv-2717, 2023 WL 5020618, at *12 (S.D. Tex. June 9, 2023). A private plaintiff does not have standing to enforce the FTC Act. *See Fraker, infra,* 2009 WL 5865687.

merely that it is unsubstantiated by acceptable tests or other proof'"); *Macormic v. Vi-Jon*, No. 4:20CV1267 HEA, 2021 WL 6119166, at *7 (E.D. Mo. Aug. 6, 2021) ("[i]n the false advertisement context, this means that the [Food, Drug, and Cosmetic Act] bars claims that argue a lack of substantiation but not claims where a plaintiff proffers evidence showing that an advertised claim is false"); *Fraker v. Bayer Corp.*, No. CV F 08 - 1564 AWI GSA, 2009 WL 5865687, at *8 (E.D. Cal. Oct. 6, 2009) ("[i]n short, the government, representing the Federal Trade Commission, can sue an advertiser for making unsubstantiated advertising claims; a private plaintiff cannot"); *Fitzpatrick v. Vital Pharms., Inc.*, No. 20-61121-CIV, 2021 WL 6776238, at *5 (S.D. Fla. June 4, 2021) ("Plaintiffs merely allege that VPX has no substantiation for their claims about BANG's effectiveness. Without factual support for their claim that BANG is ineffective, Plaintiffs' conclusions are merely speculation and not entitled to weight").

Decisions in this Circuit and applying Fifth Circuit law support this view. In *Good Sportsman Mktg. LLC v. Non Typical*, No. 6:07CV177, 2008 WL 11348379, at *4 (E.D. Tex. May 8, 2008), the plaintiff challenged a series of claims regarding the performance of defendant's Cuddeback cameras as to image capture, trigger speed, instant triggering, and battery life. To support its claim of false advertising on a motion for preliminary injunction, the plaintiff presented an expert opinion and declaration questioning whether defendant's tests were adequate support for the defendant's claims. The court determined that the expert's opinions were insufficient to show a substantial likelihood of success. For example, as to battery life, the court stated, "[t]hat Cuddeback's claims are not substantiated by [plaintiff's expert's] tests, by itself, is not enough to show substantial likelihood that the statements in the commercials violate § 43(a) of the Lanham Act." *Id.* at *4, *citing BASF Corp.*, 41 F.3d at 1089.

9

In *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317 (Fed. Cir. 2009), the Federal Circuit, applying Fifth Circuit law, affirmed summary judgment for a defendant on a false advertising claim. The plaintiff challenged the claim "embedded metallic mesh material that enhances the strength of the sleeve" as literally false. The plaintiff, however, failed to meet its burden of showing literal falsity because its expert's declaration and report conceded that "[t]he effect of the [metal] screen is unknown." In other words, an alleged lack of substantiation for the defendant's claim was insufficient to show the statement was false. *See id.* at 1330.[2]

Humann attempts to save its disallowed theory by making conclusory allegations that Ambrosia's claims are "literally false" because "the ingredients and quality of Defendant's product cannot provide health benefits that Defendant represents." *See, e.g.*, FAC ¶ 28. Humann, however, asserts *no facts* whatsoever plausibly suggesting that Ambrosia's ingredients are incapable of providing the claimed health benefits or any fact about the quality of Ambrosia's ingredients. Humann's additional allegations are simply saying the same thing in a different way—that Ambrosia's claims are not supported by studies or tests—*i.e.,* that they lack substantiation. *See, e.g.*, FAC ¶ 29 ("There is no study or test that substantiates this claim"). Humann does not allege the existence of any fact, test, or study that would affirmatively disprove Ambrosia's claims and demonstrate "falsity" as opposed to a "lack of substantiation." *See BASF Corp.*, 41 F.3d at 1091 ("a Lanham Act plaintiff bears the burden of proving literal falsity . . . the plaintiff must offer affirmative proof that the advertisement is false").[3] Accordingly, there is no set of facts that Humann can allege that would entitle it to relief based on allegedly "unsubstantiated" claims.

---

[2] Although decided on different procedural postures, both cases support the proposition that a pure "lack of substantiation" claim does not state a claim upon which relief may be granted.

[3] Humann attempts to bolster its conclusory allegations by claiming "discovery will show" the challenged claims are false. FAC ¶¶ 23, 27-29, 53. But, this puts the cart before the horse. As the

Further, most of Humann's complaints regarding an alleged lack of substantiation also involve structure/function claims related to the beetroot powder ingredient, which describe the role of a nutrient or dietary ingredient intended to affect the normal structure or function of the human body. *See* FAC ¶¶ 27, 28, 44-45, 53. The FDA expressly permits structure/function claims. *See Greenberg v. Target Corp.,* 985 F.3d 650, 654-55 (9th Cir. 2021). Determining whether a structure/function claim is appropriate falls within the purview of the FDA. *Id.* at 655 ("[t]he FDCA's preemption provision covers structure/function claims because its requirements appear in section 343(r)(6), which falls under the preemption provision's umbrella").

Humann impermissibly premises its false advertising claims on an alleged "lack of substantiation." *See, e.g.*, FAC ¶ 22. Ambrosia respectfully requests that all of Humann's false advertising claims based on an alleged lack of substantiation be dismissed for failure to state a claim upon which relief may be granted. *See, e.g.*, *Fitzpatrick,* 2021 WL 6776238 (granting motion to dismiss lack of substantiation claim); *Fraker,* 2009 WL 5865687 (same).

## II.    Plaintiff Fails to Allege Facts Sufficient to Support a Contributory False Advertising Claim.

Humann further attempts to bring a contributory false advertising claim against Ambrosia for independently created third-party content on TikTok. FAC. ¶¶ 47-75. Humann, however, fails to allege *any* facts that plausibly show Ambrosia induced or materially contributed to the third-party conduct it complains of. Humann's new allegations in the FAC—asserting that Ambrosia provides marketing resources to creators— do not cure the deficiencies, because Humann does not allege that these resources induce third parties to engage in improper advertising.

---

Supreme Court has noted, Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 678-79.

11

"The degree of involvement by the defendant distinguishes a direct false advertising claim from a contributory false advertising claim: in a direct false advertising case, the defendant made the misrepresentation itself; in a contributory false advertising case, the defendant induced or caused another to make the misrepresentation." *Isk Biocides, Inc. v. Pallet Mach. Grp. Inc.,* Civil Action No. 3:21-cv-386, 2022 WL 122923, at \*7 (E.D. Va. Jan. 12, 2022). "Contributory false advertising claims are cognizable under the Lanham Act, but a plaintiff must allege more than an ordinary business relationship between the defendant and the direct false advertiser in order to plausibly plead its claim." *Duty Free Ams.*, 797 F.3d at 1279. "The mere sale of products in the course of an ordinary business relationship, without more, cannot justify a finding that a defendant induced, encouraged, caused, procured, or brought about false advertising." *Id.* "Once the plaintiff establishes the elements of a direct false advertising claim against a third party, it must allege that the defendant contributed to that conduct. This means that the plaintiff must allege that the defendant had the necessary state of mind—in other words that it 'intended to participate in' or 'actually knew about' the false advertising. *Id.* at 1277 (citation omitted). "The plaintiff must also allege that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *Id*. at 1277, *citing 1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1249 (10th Cir. 2013).

Here, Humann alleges that a handful of creators on TikTok have made unsubstantiated claims about Ambrosia's product. FAC ¶¶ 49-63.[4] As an initial matter, for Humann to plausibly allege a cause of action for contributory false advertising, it must first properly allege direct false advertising by each third-party creator. *See, Duty Free Ams., 797 F.3d at 1277.* As discussed above, each of the allegations of direct false advertising by the third-party content creators are deficient

---

[4] In the FAC, Humann identifies nine creators that have allegedly made false or misleading statements.

because they are based on representations that Humann claims are unsubstantiated and "entirely unfounded." FAC. ¶ 48. Humann claims "[t]here is no evidence, scientific or otherwise, which substantiate the claim that beetroot, alone, at the dosages provided by Defendant's products, increases athletic or sexual performance." *Id.* ¶ 53. Humann continues, "[n]either Defendant nor its influencers cite or otherwise rely on any studies, clinical trials, or even concrete evidence that Defendant's products cause the benefits they claim." *Id.* ¶ 53. The FAC further adds that "discovery will show" that "the ingredients and quality of Defendant's product cannot provide the weight loss, athletic performance, and sexual performance benefits that Defendant and its influencers represent." *Id.* ¶ 53. But, as discussed above, allegations of a lack of substantiation are the purview of the FTC and cannot be maintained by a private plaintiff. *See, supra,* Argument Section I. Humann has failed to allege direct false advertising by the individual creators Humann has identified in its Complaint, defeating its claim for contributory false advertising.

In addition, Humann fails to allege any facts that plausibly suggest Ambrosia induced false advertising. Humann alleges "[o]n information and belief, Defendant profits from the TikTok Posts through commission and consumer redirect links…" FAC ¶ 66. Humann further alleges "[o]n information and belief, Defendant is compensating influencers…" *Id.* ¶ 67. The only factual predicate for these allegations is that some of the posts include a "paid partnership" tag. *Id.* In its FAC, Humann additionally alleges that "[d]iscovery will show that Defendant operates, controls, and solicits participation in a private Discord channel for its creators and influencers" and that Defendant "provides a 10-hour course" and "coaches and provides advertising scripts and messaging guides[.]" *Id.* ¶ 68. Yet, nothing alleged by Humann is improper. Ambrosia is fully entitled to use the features of TikTok Shop and social media, like a Discord channel, to promote its products.

Indeed, TikTok allows a brand to make products on TikTok Shop available for TikTok creators to promote and share with their followers.[5] Allowing creators to promote and share a brand's products with their followers, however, is not equivalent to inducing a creator to make any specific claim about a product—especially an allegedly false claim or a claim that is not compliant with TikTok's policies—as Humann suggests. Indeed, many brands provide guidance and support for creators to develop content consistent with TikTok Shop's policies.[6] And, while most creators promote products in accordance with TikTok Shop's Content Policy, that a creator can make a post that does not comply or is alleged to be false advertising does not mean a brand has done anything to induce or encourage that content. Humann's argument goes too far and would create contributory brand liability for any allegedly offending content posted on TikTok by a third party about the brand's products, regardless of whether the brand did anything to induce or otherwise bring about the allegedly offending content.

Further, while alleging some posts have a "paid partnership" tag and that Ambrosia provides "guidance," Humann omits that, at the time of its Complaint and FAC, the "Shop" button had been removed and does not appear on the third-party posts highlighted by Humann. *See* FAC ¶ 67, Exs. H, I, and K (no shop button displayed). Without a "Shop" button, a creator cannot link to a product on the TikTok Shop or earn a commission from attempting to promote or share a product with their followers.[7] At best, Humann alleges that at some point Ambrosia and third-

---

[5] *See* TikTok Open Collaboration, available at https://ads.tiktok.com/help/article/about-open-collaborations-in-seller-center, last visited June 17, 2026.

[6] *See* TikTok Content Policy, available at https://seller-us.tiktok.com/university/essay?knowledge_id=6837891779151617, last visited June 17, 2026.

[7] Oddly, in the FAC, Humann alleges "[o]n information and belief, Defendants have the power to demonetize posts that do not comply with Defendant's guidelines," FAC ¶ 69, a fact that Ambrosia disclosed to Humann in settlement discussions. But, the fact that Ambrosia has removed the "Shop" button from the allegedly offending posts and "demonetized" them defeats Humann's claim as it

party TikTok creators had a commission sales relationship. This is not unlawful. *See Duty Free Ams.,* 797 F.3d at 1279 ("[t]he mere sale of products in the course of an ordinary business relationship, without more, cannot justify a finding that a defendant induced, encouraged, caused, procured, or brought about false advertising").

Importantly, Humann does not allege (because it cannot) that Ambrosia induced or caused any third-party creator to make any of the claims Humann complains of—whether it be weight loss, athletic performance, sexual performance, or any other specific claim or conduct. Humann pleads the existence of a Discord channel and alleged messaging guidelines, but again, never once asserts that the Discord channel or guides contain information regarding or encouraging third parties to make claims of weight loss, athletic performance, sexual performance, or any other specific claim or conduct. Humann merely alleges that these resources exist, not that they encourage unlawful activity. *See id.* ¶ 68.

Ambrosia is entitled to use TikTok Shop to sell its products and use TikTok functionality to allow creators to promote and share products with their followers. Humann ignores the positive effects of this technology and only focuses on a handful of creators that it believes have violated TikTok's policies or made allegedly unsubstantiated claims. Yet, at end, Humann fails to allege any fact that plausibly shows Ambrosia had the requisite state of mind or did anything to actively participate in or materially contribute to any allegedly false or misleading claim made by a third-party creator on TikTok.

Accordingly, Humann fails to state a claim for contributory false advertising. Ambrosia respectfully requests that the Court dismiss Humann's contributory false advertising claim.

---

demonstrates that Ambrosia is actively working to stop allegedly improper third-party conduct, not induce or promote it. Accordingly, Humann alleges facts that are inconsistent with the requisite state of mind for a *prima facie* case of contributory false advertising.

### III.    Plaintiff's Allegations Do Not Provide Fair Notice of Its Claims.

Humann's First Amended Complaint, like its predecessor, fails to satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, as it does not provide sufficient detail to give Ambrosia fair notice of the grounds upon which its claims rest. *E.E.O.C. v. SDI of Grapevine Texas*, No. 3:08-CV-1606-L, 2009 WL 1469779, at *2 (N.D. Tex. May 27, 2009) (Stating Rule 8(a)(2)'s "short and plain" statement requirement requires that pleadings "must contain facts 'that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'").

Humann's Complaint is ambiguously based on "False Claims," defined as "these misrepresentations." FAC ¶ 25. None of the allegations in Humann's Complaint are tied to any of its four putative causes of action. As identified above, Ambrosia has no way of knowing whether these allegations are mere flourishes for the sake of crafting an eye-catching narrative, or whether they are material facts underlying one or more of Humann's claims. *See Cleveland State Bank v. JPMorgan Chase Bank*, No. 4:24-CV-1600, 2025 WL 296144, at *3 (S.D. Tex. Jan. 24, 2025) ("the pleading contains allegations relating to both counts in one subsection—there is neither a clear beginning nor a clear end to the allegations for either cause of action").

Each cause vaguely refers to "false or misleading" statements, but none of the allegations specify the statements to which Humann is referring. *See, e.g.,* Count I, FAC ¶ 85 (alleging "[t]he acts of Defendant complained of herein" are what constitute "false or misleading" statements); Count III, FAC ¶ 99 (alleging "Defendant's false and misleading statement constitute unfair competition"). In addition, Humann interchangeably argues "unsubstantiated," "false," or "misleading" claims. Whether Humann is alleging a claim is unsubstantiated, false, or misleading is important for Ambrosia's ability to respond to the claim because different legal standards apply

16

to each category of allegedly unsubstantiated, false or misleading statements. *See, supra,* Argument Section I (arguing a private plaintiff cannot support a claim based on lack of substantiation); *Clock Spring,* 560 F.3d at 1329 ("[t]he distinction between a literally false statement and a materially misleading statement is important. A claim based on a materially misleading statement requires proof of actual consumer deception, while in the case of a claim based on a literally false statement the court presumes the existence of deception"), *citing Pizza Hut,* 227 F.3d at 497.

Accordingly, in the alternative to its motion to dismiss, Ambrosia respectfully requests that the Court require Humann to provide a more definite statement of its claims, specifying what claims are allegedly unsubstantiated, what claims are allegedly false, what claims are allegedly misleading, and what conduct by Ambrosia allegedly supports Humann's attempt to allege false advertising, contributory false advertising, and unfair competition.

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court dismiss Humann's First Amended Complaint or, in the alternative, order a more definite statement and allow Ambrosia thirty (30) days to respond to any such amended complaint, and grant any further and additional relief the Court deems just and equitable.

Dated:  June 22, 2026

Respectfully submitted,

By: */s/ Ryan A. Botkin*

Ryan A. Botkin
State Bar No. 00793366
ryan@bccaustin.com
Kayna Stavast Levy
State Bar No. 24079388
kayna@bccaustin.com

**BOTKIN CHIARELLO CALAF PLLC**
1209 Nueces Street
Austin, Texas 78701
Telephone: (512) 615-2341
Fax: (737) 289-4695

George Spatz
(ARDC # 6278494 )
(*Pro Hac Vice*)
gspatz@awglaw.com

**AMIN WASSERMAN GURNANI LLP**
230 W. Monroe Street, Suite 1405
Chicago, IL 60606
Telephone: (312) 466-1033
Facsimile: (312) 884-7352

**ATTORNEYS FOR PLAINTIFF AMBROSIA BRANDS LLC**


## CERTIFICATE OF SERVICE

I certify that on June 22, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record who have appeared in this case.

/s/ *Kayna Stavast Levy*
Kayna Stavast Levy