# EXHIBIT A
# Second Amended Complaint
# (clean version)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HUMAN POWER OF N COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 1:26-cv-00374-ADA-ML |
| | § | |
| v. | § | |
| | § | |
| AMBROSIA BRANDS, LLC, LUCA WASHENKO, AND JOHN DOES 1-10, | § | **JURY TRIAL DEMANDED** |
| | § | |
| | § | |
| Defendants. | § | |

## SECOND AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiff Human Power of N Company ("Plaintiff" or "Humann"), appearing through its undersigned counsel, submits this Second Amended Complaint and alleges as follows:

## THE PARTIES

1. Plaintiff Humann is a Texas corporation with a principal place of business at 1250 S. Capital of Texas Hwy., Bldg. 1, Suite 300, Austin, Texas 78746.

2. Defendant Ambrosia Brands, LLC ("Ambrosia"), is a Wyoming limited liability company with an address of 525 Randall Ave., Ste. 100, Cheyenne, Wyoming 82001.

3. Defendant Luca Washenko ("Washenko") is an individual with an address of 525 Randall Ave., Ste. 100, Cheyenne, Wyoming 82001.

4. Defendants John Does 1-10 are the unknown individuals behind the social media accounts that continuously advertise on Ambrosia and Washenko's behalf. Upon information and belief, John Does 1-10 (the "Doe Defendants") participated in the acts alleged herein. Plaintiff Humann will seek leave to amend this Complaint to substitute the Doe Defendants' true names once they are ascertained through investigation or discovery.

5. Defendant John Doe 1 is the unknown individual who operates, controls, and is otherwise associated with the TikTok account known as "badobadi86."

6. Defendant John Doe 2 is the unknown individual who operates, controls, and is otherwise associated with the TikTok account known as "poormaninla."

7. Defendant John Doe 3 is the unknown individual who operates, controls, and is otherwise associated with the TikTok account known as "trinibof8dl."

8. Defendant John Doe 4 is the unknown individual who operates, controls, and is otherwise associated with the Instagram account known as "nerdforlifecomics."

9. Defendant John Doe 5 is the unknown individual who operates, controls, and is otherwise associated with the Instagram account known as "mama_ayanna.healing."

10. Defendants John Doe 6-10 are as-yet unidentified.

**NATURE OF ACTION AND JURISDICTION**

11. While Humann welcomes fair and vigorous competition, Defendants are using false and misleading statements about their beetroot powder product that will deceive customers into expecting unsubstantiated and unproven health and wellness

benefits from use of Humann's products, which similarly include beet ingredients, but are carefully formulated to provide therapeutic doses of nitrate, dietary nitrite and other ingredients in order to offer clinical benefits to consumers. Humann therefore brings this action for false advertising and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act") and for unfair competition under Texas common law.

12. This Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. §§ 1331 and 1338, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

13. This Court has personal jurisdiction over Defendants because they engaged in wrongful action in Texas, including acts within this District. Defendants have offered for sale and made sales into this District, targeting consumers within this District with Defendants' false and misleading statements about their products.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Humann's claims occurred here.

## FACTS

### HUMANN AND ITS PRODUCTS

15. For over fifteen years, Humann has been an industry leader in functional food and nutritional supplements for human health. Founded from scientific research at the University of Texas and a research program created by

Nobel laureate Dr. Ferid Murad, the science behind Humann's products has been validated and vetted by a premier team of doctors and nutritionists.

16. Among Humann's first and most popular products are its SUPERBEETS heart chews and dietary supplements. Humann's SUPERBEETS products harness the real and measurable benefits of nitrates, found naturally in beets, to support the body's generation of nitric oxide. In order to provide sufficient nitrate and other elements in the products, however, Humann includes additional ingredients in its products, such as fermented beetroot powder or grape seed extract, to provide sufficient amounts of nitrate, dietary nitrite, or the other ingredients necessary to deliver the scientifically established clinical benefits.

17. Humann offers its SUPERBEETS products in various forms, including chews, powders, gummies, and capsules. Common to all SUPERBEETS products is the inclusion of non-GMO beetroot powder sustainably sourced from renowned growing regions. The SUPERBEETS products are formulated with additional ingredients such as fermented beetroot powder or grape seed extract in quantities and concentrations necessary to achieve clinically supported health benefits.

18. The health benefits of Humann's SUPERBEETS products are backed by a robust body of research.

19. For example, researchers at the University of Iowa published a 2017 study that compared the use of Humann's SUPERBEETS product with a placebo over four weeks. The results of the study showed that individuals using Humann's SUPERBEETS product experienced a beneficial effect on their blood pressure levels

when compared to the placebo group. An accurate copy of the study is attached hereto as **Exhibit A.**

20. In a 2018 study published in the American Journal of Physiology, University of Iowa researchers observed that nitrate supplementation through Humann's beetroot powder reduced systolic and mean arterial blood pressure without affecting spontaneous cardiovagal baroreflex sensitivity, which suggests that inorganic nitrate may attenuate sympathetically oriented pathologies associated with aging. An accurate copy of the study is attached hereto as **Exhibit B.**

21. In a 2021 study published in the medical journal Current Research in Physiology, researchers from Northern Illinois University, the University of Wisconsin, the University of Texas at Austin, and Westfield State University observed Humann's beetroot supplement delayed fatigue and improved total work output in cyclists riding at higher cadence rates. An accurate copy of the study is attached hereto as **Exhibit C.**

22. Humann's careful use of clinical studies allow it to substantiate and promote the health benefits of its SUPERBEETS products. The body of research shows that Humann's SUPERBEETS products promote healthy blood pressure, circulation, and daily energy.

23. The quality and measurable benefits associated with Humann's products have resulted in numerous awards and recognition from medical associations. As of 2025, Humann is the #1 cardiologist-recommended beet brand for cardiovascular health support and the #1 pharmacist recommended beet brand for

heart health support based upon market survey date. In addition, Humann was the recipient of the 2017 Nutrition Science Award by Nutrition Business Journal.

24. Humann's advertising for its SUPERBEETS products is extensive. Humann advertises its products through its website, www.humann.com, through substantial television advertising, digital advertising, public venue signage and sponsorships, and through Humann's network of brand ambassadors and influencers. In addition to Humann's online and offline advertising channels, Humann also boasts over 28,000 followers on Facebook, 40,000 followers on Instagram, and 4,700 followers on TikTok.

25. Beyond Humann's success at retail, Humann products are utilized by over 200 college and professional athletics teams to supplement team nutrition. In 2025, Humann became the official cardiovascular supplement sponsor of the University of Texas Athletics.

## DEFENDANTS AND THEIR UNLAWFUL ACTIVITIES

### ***Defendants' False Advertising Campaign***

26. Defendant Luca Washenko founded and operates, alongside Ambrosia, a competing business under the brand name "Rosabella." Through Rosabella, Washenko and Ambrosia (the "Rosabella Defendants") sell similar nutritional supplements based on beetroot and beetroot byproducts (the "Rosabella Products").

27. The Rosabella Defendants solicit their products to a similar category of customers by offering a competing beetroot supplement. The Rosabella Defendants sell their beetroot powder product online, on their website www.tryrosabella.com. A

screenshot of the Rosabella Defendants' point of sale is attached hereto as **Exhibit D**.

28. The Rosabella Products are similar to Humann's products in that the Rosabella Defendants include beetroot powder in their products.

29. The Rosabella Defendants list their products at the same price as Humann's competitive but superior products. The Rosabella Defendants sell a one-month supply of their beetroot capsules for $39.95, or $35.96 with automatic refills. Humann sells a one-month supply of its SUPERBEETS beetroot powder at $39.95 per container, or $35.96 with a recurring monthly subscription—the same price as the Rosabella Defendants' one-month supply. However, the Rosabella Products are frequently available at significant discounts, sometimes as low as $10 per container for a one-month supply. These discounts are often available on the TikTok Shop, the same platform where the Rosabella Defendants sponsor their influencers, including the Doe Defendants. True and accurate screenshots of the points-of-sale showing the price of the parties' respective products are attached as **Exhibit E.**

30. Beginning at least as early as July 2025, Defendants began to make unfounded, unsubstantiated claims about the efficacy and health benefits of the competing beetroot product. None of these claims are supported by scientific, peer-reviewed studies or tests.

31. But beyond lacking scientific or academic substantiation, Defendants' claims about the efficacy and health benefits of the Rosabella Products are false and misleading. The Rosabella Products do not contain any of the additional ingredients,

such as fermented beetroot powder or grape seed extract, that would deliver nitrate, nitrite, or other ingredients in dosages necessary to deliver clinical benefits. As discovery will show, this fact makes any claim about purported health benefits literally false.

32. For example, Humann's testing of a sample of the Rosabella Products indicates that a serving of two capsules of their beetroot powder contains 11.2 mg of nitrate. Any clinical benefit from nitrate alone would require approximately 400mg of nitrate. As such, a consumer would need to take approximately thirty-five doses of the Rosabella Products at one time in order to receive a clinically relevant amount of nitrate.

33. These misrepresentations (the "False Claims") contains numerous specific and literally false statements about the health benefits and quality of the Rosabella Products.

34. The False Claims also amount to misleading statements that are certain to mislead a substantial portion of Humann's target customers. Specifically, consumers relying on Defendants' false and unsubstantiated claims about the Rosabella Products to their detriment will be deceived as to the efficacy of similar products like Humann's products, which are rigorously tested, carefully formulated, and backed by bona fide scientific research, unlike the Rosabella Products. Consumers will come to expect unrealistic health benefits from products that also contain beetroot ingredients.

35. For example, Defendants claim, on their packaging, website, and in social media advertisements, that their beetroot capsules "aid[] healthy circulation." There is no study or test that substantiates Defendants' claim that the Rosabella Products alone aid healthy circulation. Also, the ingredients and quality of the Rosabella Products cannot provide health benefits that Defendants represent. As discovery will show, this fact makes any claim about purported health benefits of the Rosabella Products literally false.

36. For example, Defendants claim their beetroot capsules "assist[] athletic performance." There is no study or test that substantiates this claim for beetroot powder alone. Also, the ingredients and quality of the Rosabella Products cannot provide health benefits that Defendants represent. As discovery will show, this fact makes any claim about purported health benefits of the Rosabella Products literally false.

37. For example, the Rosabella Defendants claim their beetroot capsules "offer[] superior potency . . . compared to leading beetroot powder organic brands." There is no study or test that substantiates this claim, particularly any study that directly compares the Rosabella beetroot products with other "leading" beetroot powder brands. Also, the ingredients and quality of the Rosabella Products cannot provide the superior potency that Defendants represent. As discovery will show, this fact makes any claim about purported health benefits of the Rosabella Products literally false.

38. Defendants claim each beetroot capsule product is "made with natural ingredients," is "100% vegan," and "each serving . . . contains 1300mg of "Pure Organic Beetroot Powder." A representative image of Defendants' marketing representations about the ingredients in the Rosabella Products is copied below.




39. This statement was literally false, as the Rosabella Products also contain magnesium stearate and microcrystalline cellulose. Both of these ingredients are processed and are not "natural." A true and accurate image of Rosabella's product label is depicted below, showing the magnesium stearate and microcrystalline cellulose ingredients.




***Rosabella's Beetroot Capsule Label***

40. Defendants also make false claims about the studies and testing related to the Rosabella Products. For example, as recently as July 10, 2025, Defendants claimed that the Rosabella Products "are expertly crafted by top cardiovascular health specialists and backed by cutting-edge science." A screenshot displaying this claim is pictured below.




41. This statement is literally false, as Defendants, on information and belief, do not work with or have any business relationship with "top cardiovascular health specialists" or any medical professional. The Rosabella Defendants removed this claim only after Humann objected to this misrepresentation in July 2025.

42. Defendants also falsely claim that Rosabella's beetroot capsule product is CGMP certified.

43. The initialism "CGMP" refers to the "Current Good Manufacturing Practice" regulations set forth by the Food and Drug Administration (FDA). According to the FDA, CGMP adherence "assures the identity, strength, quality, and purity of drug products by requiring that manufacturers of medication adequately control manufacturing operations." Attached as **Exhibit F** is a publication by the FDA describing the requirements associated with CGMP regulations and certification.

44. To obtain CGMP certification, the FDA must inspect a company's manufacturing facilities and test its products. *See* Exhibit F.

45. On information and belief, the Rosabella Defendants have not obtained CGMP certification from the FDA, nor has the FDA inspected or tested Rosabella's beetroot capsule product for certification.

46. The Rosabella Defendants also falsely claim their beetroot capsules are "Made in USA." A screenshot showing the Rosabella Defendants' "Made in USA" claim is attached hereto as **Exhibit G** and shown below.




47. On information and belief, the beetroot contained in Rosabella's capsules is not grown in the US. The Rosabell Defendants concede as much with the qualifying language "with global ingredients." A screenshot showing their qualifying language is shown below.




48. Under the Federal Trade Commission's definition of "Made in the United States," all significant processing that goes into a product *and* "all or virtually all ingredients or components" of the product must be made and sourced in the United States to accurately state that a product is "Made in the USA." 16 C.F.R. § 323.2.

49. To offer the Rosabella Products at the discounted price point of around $10 per bottle, the Rosabella Defendants could not sustainably source their beetroot powder from the United States.

50. On information and belief, the Rosabella Defendants are not using beetroot grown in the United States in their beetroot capsules, which makes their claims about "Made in the USA" false.

51. On information and belief, the Rosabella and Doe Defendants target Humann's customers with these false claims and misrepresentations. Defendants imitate Humann's truthful advertising to appeal to the same category of customer.

52. For example, Defendants often use wording and claims that are identical to Humann's advertising materials, especially for the Rosabella Defendants' health claims presented via their direct-to-consumer website and on Amazon. A representative comparison of the Rosabella Defendants' advertising with Humann's advertising is pictured below.

| | |
|---|---|
|  |  |
| ***Defendants' Health Claims*** | ***Humann's Health Claims*** |

53. As the above comparison shows, Defendants make health claims identical to Humann to promote their competing but inferior product with identical statements such as "healthy blood pressure support," "promotes heart healthy energy," supports circulation & blood flow," and "helps increase nitric oxide production."

54. However, unlike Humann, Defendants cannot substantiate these claims. Humann has long worked with the scientific community to test and study the benefits of its products and its formulations. The Rosabella Products contain dosages of nitrate that are insufficient to provide any clinical benefit, yet they use the same health claims to promote their inferior product.

### *Defendants' "Viral" Misinformation Campaign on TikTok*

55. In addition to the False Claims directly attributable to Defendant Ambrosia, Ambrosia Brands and Luca Washenko in his individual capacity are orchestrating a misinformation campaign on TikTok through a network of influencers, including the Doe Defendants in a series of social media posts on TikTok (the "TikTok Posts") and Instagram (the "Instagram Posts"), among other platforms.

56. The influencers and personas featured across the TikTok and Instagram Posts make various misrepresentations about the health and wellness benefits of the Rosabella Products, which are entirely unfounded.

57. For example, in a November 25, 2025 post, Defendant John Doe 1, the influencer "badobadi86," claims that as a result of consuming Rosabella's beetroot product, the influencer's "performance in the gym and the bedroom has increased by far." Representative screenshots of Doe 1's posts are attached hereto as **Exhibit H**.

58. In a January 2, 2026 post, Doe 1 also claimed that the Rosabella Products "increased blood flow especially to the lower area," referencing sexual performance. Representative screenshots are attached as **Exhibit I**.

59. As another example, in an October 29, 2025 post, influencer "wellness.tips07" purports to show an AI-generated speaker that claims that aches, stiffness, pains, and inflammation is not "weight, your age, and definitely not arthritis," but instead a blood circulation issue that the Rosabella Products can alleviate. The post features the hashtags #womenhealth and #health, as well as the

label indicating that the post is created with AI. Representative screenshots of this influencer's posts are attached hereto as **Exhibit J**.

60. Influencers like Doe 1 ("badobadi86") and "wellness.tips07" flood the internet with such videos. Since July 10, 2025 alone, Doe 1 has created promotional videos daily for the Rosabella Defendants. All to nearly all of Doe 1's videos represent that the Rosabella Products increase sexual performance.

61. There is no evidence, scientific or otherwise, which substantiates the claim that beetroot, alone, at the dosages provided by the Rosabella Defendants' products, increases athletic or sexual performance. Neither the Rosabella Defendants nor the Doe Defendants cite or otherwise rely on any studies, clinical trials, or even concrete evidence that the Rosabella Products cause the benefits they claim. Also, the ingredients and quality of the Rosabella Products cannot provide the weight loss, athletic performance, and sexual performance benefits that the Rosabella and Doe Defendants represent. As discovery will show, this fact makes these claims literally false.

62. Other TikTok and Instagram Posts are more nefarious. In several TikTok and Instagram Posts, the post purports to show a doctor, medical professional, or other medical authority espousing the health benefits of the Rosabella Products. All or nearly all of the "doctors" featured in these Posts are AI-generated and fictitious, making the claims in the advertisement false and/or misleading.

63. For example, in a June 14, 2025 TikTok post, Defendant John Doe 2, the influencer "poormaninla," purports to depict a doctor in a whitecoat that promotes

the alleged health benefits of the Rosabella Products. Before the "doctor" begins speaking, a separate speaker is imposed on the screen in a surgeon's or nurse's scrubs. Representative screenshots of this post are attached as **Exhibit K.**

64. For example, in a June 23, 2025 post, influencer "holistic.love" purports to show a "surgeon," who is AI-generated, promoting the health benefits of the Rosabella Products and their ability to achieve a "SLIM stomach secret." This post, and many other posts from Rosabella's influencers, including the Doe Defendants, are tagged with a "paid partnership" label on TikTok. Representative screenshots are attached as **Exhibit L**.

65. For example, in a December 5, 2025 TikTok post, influencer "thehealerdirect" purports to show a couple that lost a significant amount of weight in just ninety days because of the Rosabella Products. The couple then claims they relied on an individual with "21 years in holistic healing," who promotes the Rosabella Products, but claims users don't need to skip meals or exercise. Neither the couple nor the representative with "21 years in holistic healing" are real, however, and the post is tagged with "Creator labeled as AI-generated." Representative screenshots of this post are attached as **Exhibit M.**

66. In other posts, the AI-generated speaker provides controversial medical advice. For example, in a December 3, 2025 post, creator "healthyteach888" tells viewers they do not need to "eat clean" or "any medication that some doctor may try to push on you" in order to lose weight. Instead, according to the speaker, the viewer

just needs the Rosabella Products. Representative screenshots of this post are attached as **Exhibit N**.

67. In several other posts, the account owner purports to depict a representative of a specific ethnicity stating why the Rosabella Products benefit that ethnicity. Many of these posts contains sweeping generalizations and even downright racist statements.

68. For example, in the June 14 TikTok post referenced above, the nurse or doctor speaking at the beginning of the video says "Just because he's black, doesn't mean he's joking." *See* Exhibit K.

69. The Rosabella influencers flood TikTok with similar racially charged posts. For example, in a July 28, 2025 post, Defendant John Doe 3, the creator "trinibof8dl," depicts a white woman stating, "Black doctors don't know what they're doing is a big lie." The video then shows a speaker in front of a backdrop, which reads "Black Health Society," who promotes the Rosabella Products. Representative screenshots of this post are attached as **Exhibit O**.

70. For example, creator "stella.ryan2" has created numerous TikTok posts promoting the Rosabella Products with captioned titles like "He found the Asian SECRET to HIDE BELLY." In a November 26, 2025 post, the depicted speaker is dressed in a Buddhist monk's garb and states "I'm thirty years older than the average man who dies in America, but nobody believes me when I tell them this." Representative screenshots of such posts are attached hereto as **Exhibit P**.

71. In a similar December 12, 2025 post, creator "sydneyswellness" uses the caption "Ancient Asian secret for Women over 45." The speaker references his "teacher," a "Dr. Lee Jong Shin," who "long ago" encouraged the speaker to use the Rosabella Products. Representative screenshots of this post are attached as **Exhibit Q**.

72. The Rosabella Defendants' reach also extends to Instagram. For instance, Defendant John Doe 4, creator "nerdforlifecomics," has created numerous Instagram posts promoting the Rosabella Products. For example, in an October 20, 2026 Instagram post, Doe 4 represents that the Rosabella beetroot capsules have "only one ingredient, 1,300 milligrams of organic beetroot" and claims that the capsules improve sexual performance for a "man who's [] not standing at attention like he used to." Doe 4's posts are tagged with a "paid partnership" label on Instagram.

73. John Doe 5, the influencer "mama_ayanna.healing" is an AI-generated speaker who is modeled after an elderly Jamaican woman called Tia Ayanna who wears a red, green, and yellow headwrap and speaks in a poor Jamaican accent. In a May 4, 2026 Instagram post, the AI-generated woman represents to the audience that the Rosabella products can reverse the effects of smoking by improving blood circulation to the lungs.

74. In a separate May 4, 2026 post, Doe 5, through the character Tia Ayanna, claims that the Rosabella Products help improve sexual performance and continues to speak in a Jamaican accent stating, "them doctors put you on pills that

make you keep coming back for more, but we Jamaicans, we use one simple root for support the blood vessels, make them open up so your banana not stay soft."

75. Therefore, not only are the Rosabella Defendants' and their promoters, including the Doe Defendants, misrepresenting the nature and quality of the Rosabella Products, but numerous TikTok and Instagram Posts are entirely created by generative artificial intelligence.

76. This creates a separate layer of deception, as consumers may not know that the endorsing speaker featured in the posts are fictitious.

77. On information and belief, the Rosabella Defendants profit from the TikTok and Instagram Posts through commission and consumer redirect links, which are used to compensate the creators of the TikTok and Instagram Posts as well as drive consumer traffic to the Rosabella Defendants' points-of-sale.

78. On information and belief, the Rosabella Defendants are compensating influencers like Doe 1 ("badobadi86"), Doe 2 ("poormaninla"), Doe 3 ("trinibof8dl"), and Doe 4 ("nerdforlifecomics") for these claims. For example, on the same November 25 post and numerous others, Doe 1, the influencer "badobadi86," indicates that his promotion of the Rosabella Products is part of a paid partnership. Representative screenshots of these influencers' paid partnership disclosure are shown below.







79. The Rosabella Defendants knowingly induced and caused their network of influencers to make false representations in the TikTok and Instagram Posts. Discovery will show that the Rosabella Defendants operate, control, and solicit participation in a private Discord channel for their creators and influencers. On information and belief, among the services offered on the private channel, the Rosabella Defendants provide a 10-hour course to their creators on advertising the Rosabella Products, the Rosabella Defendants coach and provide advertising scripts and messaging guides for advertising their products, the Rosabella Defendants provide a commission on the influencer’s sales of the products, and the Rosabella Defendants operate a network for the influencers to learn from each other and the Rosabella Defendants.

80. When influencers do not comply with the Rosabella Defendants’ advertising guidelines, the Rosabella Defendants use the monetization features of the

applicable social media platform to control the influencers. On information and belief, the Rosabella Defendants have the power to demonetize posts that do not comply with their guidelines.

81. Given the support and guidance the Rosabella Defendants provide their social media influencers on messaging and advertising their products, combined with the tools the Rosabella Defendants wield to control their influencers, there is no dispute that the Rosabella Defendants exert a significant measure of control over these supposed third parties.

82. Specifically, Defendant Luca Washenko, organizes and coaches this influencer network. In a May 2025 video soliciting new influencers posted to the "Rosabella UGC Creators" group, Washenko promotes himself as one of the "lead coaches" on private channels connected to the Rosabella brand. Screenshots of Washenko's video, titled "Make money promoting Rosabella products," is attached hereto as **Exhibit R.**

83. In the video, Washenko promotes the substantial amount of money that influencers can make from promoting the Rosabella Products. According to Washenko, the Rosabella Defendants paid out "~$400,000 last month to creators." Washenko goes on to cite specific examples, including a user named Michel who received $300,000 from the Rosabella Defendants. A screenshot of the transaction promoted by the user Michel and Washenko is copied below, showing the payment of $317,710 from Defendant Ambrosia.




84. Washenko promotes the influencer network by promising "elite coaching and support." Washenko closes the May 2025 recruitment video with the statement "If you like money, Rosabella is the brand for you." *See* Exhibit R.

85. On information and belief, Washenko manages and facilitates the Rosabella influencer network at least in part through Washenko's separate businesses, MNY Ventures and Creator's Corner. Both businesses exist to cultivate and propagate e-commerce marketing on social media platforms, including marketing using AI generated videos.

86. On information and belief, Washenko is the CEO of MNY Ventures. Attached as **Exhibit S** is a company profile identifying Washenko as the CEO of MNY Ventures.

87. Defendant Ambrosia's LinkedIn page describes MNY Ventures as "the #1 leader in AI video marketing for e-commerce." Attached as **Exhibit T** is a

representative screenshot of a LinkedIn job post by Defendant Ambrosia discussing MNY Ventures.

88. Washenko's own LinkedIn page identifies him as the founder of Creator's Corner. Attached as **Exhibit U** is a representative screenshot of Washenko's LinkedIn page identifying Washenko as a co-founder.

89. Washenko describes Creator's Corner as a community "for viral [T]ik[T]ok creators" with over 18,000 members. *See* Exhibit U. Washenko goes on to claim that Creator's Corner was sold "to one of our clients in 2026." *Id.* On information and belief, Washenko had a minority ownership interest in Creator's Corner and utilized the company to organize e-commerce marketing on social media on behalf of Defendant Ambrosia prior to the 2026 sale.

90. The Rosabella Defendants relish in their fabricated popularity online. For example, the Rosabella Defendants state on their point of sale for their beetroot capsules that the capsules are "Viral on TikTok." A representative screenshot of this claim is shown below.




91. The fact that the Rosabella Defendants rely on artificially generated content and paid endorsements also makes the "viral on TikTok" claim false.

Consumers will see the "viral on TikTok" representation and mistake it to mean that the Rosabella Products are organically viral, when the vast majority of social media traffic and popularity is paid for by the Rosabella Defendants.

### EFFECTS OF DEFENDANTS' UNLAWFUL ACTIVITIES

92. Defendants' false and misleading representations undermine public confidence in other beet products, like Humann's SUPERBEETS products. Consumers expecting the results and benefits promised by Defendants will be disappointed to find out that beetroot alone cannot provide them and may be generally discouraged from purchasing any other beet-related supplement.

93. The Rosabella Products are often sold at much lower prices compared to Humann's SUPERBEETS products, causing consumers to purchase a cheaper, inferior product that falsely claims to provide similar, or even enhanced, benefits.

94. Defendants have not substantiated any of the health or ingredient claims made in their advertising. Due to the inferior quality and ingredients of the Rosabella Products, their products cannot provide the health benefits promised by Defendants.

95. Defendants' actions are intended to deceive consumers into falsely believing that the Rosabella Products are a cheaper substitute to Humann's SUPERBEETS products.

96. Defendants' unabated actions over Humann's objections establish that Defendants' actions were willful and undertaken in bad faith, and this is an exceptional case under 15 U.S.C. § 1117.

97. Consumers who rely on Defendants' misstatements and falsehoods have been and will be deceived into purchasing the Rosabella Products believing that they are cheaper substitutes. Consumers will also incorrectly assume that beet-based products can provide health benefits that they cannot.

98. Additionally, Defendants' false statements regarding the Rosabella beetroot capsules are material to consumers' decisions to purchase the Rosabella Products.

99. Unless these acts of Defendants are restrained by this Court, they will continue, and they will continue to cause irreparable injury to Humann, to the public, and to Humann's consumers for which there is no adequate remedy at law.

**COUNT I: FEDERAL FALSE ADVERTISING**
**(15 U.S.C. § 1125(a))**

100. Humann incorporates and repeats the allegations above as if fully set forth herein.

101. The acts of Defendants complained of herein constitute false or misleading descriptions or representations of fact about the Rosabella Products in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

102. Such false or misleading representations about the Rosabella Products are material to consumers' decisions to purchase the Rosabella Products or Humann's products.

103. Defendants' statements have a tendency to deceive—and are believed to have deceived—a substantial segment of its audience.

104. The Rosabella Defendants caused their false statements to enter interstate commerce by making them on their website, their social media channels, and other points of sale targeting Humann's customers.

105. The Doe Defendants caused their false statements to enter interstate commerce by making them on their social media channels.

106. Defendants' false representations about the Rosabella Products misrepresent the nature, characteristics or qualities of their goods.

107. By reason of Defendants' acts as alleged herein, Humann has suffered and will continue to suffer damage and injury to its business and reputation, along with losses of revenue and profits associated with its goods.

108. Humann has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. Humann has no adequate remedy at law.

**COUNT II: CONTRIBUTORY FALSE ADVERTISING**

109. Humann incorporates and repeats the allegations above as if fully set forth herein.

110. The Rosabella Defendants' orchestration of a "viral" marketing scheme constitutes contributory false advertising under 15 U.S.C. § 1125(a).

111. The Doe Defendants have made a series of false, unsubstantiated claims about the efficacy of the Rosabella Products that injures Humann.

112. The Rosabella Defendants materially contributed to such conduct by knowingly inducing and causing the Doe Defendants to make such false statements.

The Rosabella Defendants pay their influencers, including the Doe Defendants, to make such false statements, evidenced by the "paid partnership" disclaimers featured in the influencers' posts and the direct bonuses and commission payments promoted by Rosabella's agents, including Washenko in his capacity as executive of Defendant Ambrosia and through his separate businesses, MNY Ventures and Creator's Corner. The Rosabella Defendants also provide guidance, coaching, messaging, and support to their influencers through private, online influencer groups.

113. Humann raised its objections with the Rosabella Defendants' and the Doe Defendants' conduct as early as July 2025. Despite Humann's objections, the Doe Defendants continue to make false representations about the Rosabella Products. Accordingly, the Rosabella Defendants are liable for the false advertising of their influencers.

114. Humann has suffered, and will continue to suffer, irreparable harm from the Rosabella Defendants' and the Doe Defendants' acts and conduct, unless restrained by law.

**COUNT III: FEDERAL UNFAIR COMPETITION**
**(15 U.S.C. § 1125(a))**

115. Humann incorporates and repeats the allegations above as if fully set forth herein.

116. Defendants' false and misleading statements constitute unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

117. Humann has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

**COUNT IV: TEXAS COMMON LAW UNFAIR COMPETITION**

118. Humann incorporates and repeats the allegations above as if fully set forth herein.

119. Under Texas law, the elements necessary to prove unfair competition through false advertising parallel those elements needed to show a Lanham Act violation, absent the requirement for goods to travel in interstate commerce.

120. The acts of Defendants complained of herein constitute false or misleading descriptions or representations of fact about the Rosabella Products.

121. Such false or misleading representations about the Rosabella Products are material to consumers' decisions to purchase the Rosabella Products or Humann's products.

122. Defendants' statements have a tendency to deceive—and are believed to have deceived—a substantial segment of its audience.

123. Defendants' false representations misrepresent the nature, characteristics or qualities of the Rosabella Products, constituting false advertising.

124. Therefore, the acts of Defendants complained of herein and stated above constitute common law unfair competition in violation of the common law of the State of Texas.

125. By reason of Defendants' acts as alleged herein, Humann has suffered and will continue to suffer damage and injury to its business and reputation, along with losses of revenue and profits associated with its products.

126. Indeed, Humann has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. Humann has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that:

(a) Defendants, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined from making false or misleading representations or statements in the marketing of their goods regarding the nature, characteristics or qualities of Defendants' goods;

(b) Defendants, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all labels and advertisements, online or offline, and any other materials bearing false or misleading representations or statements about Defendants' goods;

(c) Defendants be ordered to file with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendants of an injunction, a

report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

(d) Plaintiff recover all damages it has sustained as a result of Defendants' false advertising and unfair competition, and that said damages be trebled;

(e) An accounting be directed to determine Defendants' profits resulting from Defendants' activities, and that such profits be disgorged from Defendants and paid over to Plaintiff;

(f) Plaintiff recover all other equitable relief, including injunctive relief and corrective advertising, to which Plaintiff shows itself entitled;

(g) Plaintiff recover its reasonable attorneys' fees;

(h) Plaintiff recover its costs of this action and prejudgment and post-judgment interest; and

(i) Plaintiff recover such other relief as the Court may find appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable by jury under Federal Rule of Civil Procedure 38.

Dated: October 29, 2026

Respectfully submitted,

*/s/ Stephen P. Meleen*

Stephen P. Meleen
Texas Bar No. 00795776
Daniel S. Martens
Texas Bar No. 24116722
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300

Austin, TX 78702
Telephone: (512) 322-5200
smeleen@pirkeybarber.com
dmartens@pirkeybarber.com

*Attorneys for Plaintiff Human Power of N Company*

## CERTIFICATE OF SERVICE

I certify that on October 29, 2026, a copy of the foregoing was filed with the Clerk of Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Stephen P. Meleen*